IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : : : | |
| Plaintiff, | : : | |
| vs. | : : | CIVIL ACTION NO. 2:19-cv-702-TFM-C |
| JAMES WALLACE NALL, III, | : : : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant James Wallace Nall, III's, *Motion to Transfer Venue* (Doc. 16, filed October 24, 2019) and *Memorandum in Support of Motion to Transfer Venue* (Doc. 17, filed October 24, 2019). Pursuant to 28 U.S.C. § 1404(a), Defendant James Wallace Nall, III, requests the Court transfer this matter to the United States District Court for the Northern District of Alabama, Southern Division. Doc. 16 at 1. Having considered the motion, the evidence in support of the motion, and the relevant law, the Court finds the Motion to Transfer Venue is due to be **DENIED**.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

A.   **Factual Background**

James Wallace Nall, III ("Nall") is a resident of Birmingham, Alabama; Michael Dwaine Smith ("Michael Smith, Sr."), Michael Hale Smith ("Hale Smith"), and Robert Walter Smith ("Robert Smith") are residents of Thomaston, Alabama; and Walter Vice Tutt ("Tutt") is a resident of Demopolis, Alabama. Doc. 1 ¶¶ 11-15.

Nall's father, James Wallace Nall, IV ("Nall, Sr."), is a real-estate developer who is based

in Birmingham, Alabama, and for over twenty-five (25) years was a director of Golden Enterprises, a Delaware corporation that is headquartered in Birmingham, Alabama, and manufactures Golden Flake brand potato chips, among other products. *Id.* ¶¶ 16, 19. In October 2016, Utz Quality Food, LLC ("Utz"), a privately held snack-food company that is based in Hanover, Pennsylvania, acquired Golden Enterprises. *Id.* ¶ 17.

Nall works with Nall, Sr., in Birmingham at their family-owned real-estate-development company, Nall Development Corp. ("Nall Corp."). *Id.* ¶ 20. Prior to the merger between Golden Enterprises and Utz, Nall Corp. owned 196,000 shares of Golden Enterprises' stock. *Id.*

Nall became connected to Thomaston when his ex-wife's cousin married Hale Smith, with whom Nall became close friends and a business associate. *Id.* ¶¶ 22-23. Nall's and Hale Smith's business ventures include the purchase, improvement, and resale of hunting properties. *Id.* ¶¶ 23. Nall's friendship with Hale Smith has extended to Hale Smith's brothers, Michael Smith, Jr., and Robert Smith, and their father, Michael Smith, Sr. *Id.* ¶ 25. Through Hale Smith, Nall became acquainted with Tutt, whose real-estate company employs Hale Smith as a property broker. *Id.* ¶ 25.

On November 17, 2015, at a special board meeting for Golden Enterprises, Nall, Sr., became aware of a possible sale of the company to Utz. *Id.* ¶¶ 29-30. Nall, Sr., immediately considered the tax consequences for Nall Corp. if Golden Enterprises was sold and disclosed the possible sale of Golden Enterprises to Nall and their two (2) other partners in Nall Corp. for them to consider the sale's potential tax implications. *Id.* ¶ 31. Nall, Sr., informed the three (3) men the information was highly confidential, they should not trade in Golden Enterprises stock, and no one who they knew should trade in the stock. *Id.* ¶¶ 32-33. The three (3) partners agreed to maintain the confidentiality of the information and not engage in trading activity that was related to Golden

Enterprises. *Id.* ¶ 34.

At some point in time, Nall relayed information that he received from Nall, Sr., about the progress of the sale of Golden Enterprises, which was eventually disseminated to Hale Smith, Michael Smith, Sr., Robert Smith, and Tutt, each of whom made trades based on that information. *Id.* ¶¶ 38-45. Additional information about the sale of Golden Enterprises was relayed from Nall, Sr., to Nall; from Nall, who was in Birmingham at the time, to Hale Smith, who was in Thomaston at the time, via telephone; from Nall to Hale Smith and Tutt during a turkey hunt in Thomaston; from either Nall or Hale Smith to Michael Smith, Sr.; from either Hale Smith or Michael Smith, Sr., to Robert Smith; and from Nall to Michael Smith, Sr., via telephone. *Id.* ¶¶ 59-61, 67-69, 75, 79-82, 84, 86, 88, 93, 94, 100-101, 104.

**B.     Procedural Background**

Plaintiff Securities and Exchange Commission ("Plaintiff" or "the SEC") filed on September 23, 2019, its Complaint for Injunctive and Other Relief and brings a claim of fraud in violation of 15 U.S.C. § 78j(b) of the Securities Exchange Act of 1934 ("the Securities Exchange Act"), 15 U.S.C. §§ 78a through 78qq, against Nall, Hale Smith, Michael Smith, Sr., Robert Smith, and Tutt (collectively, "Defendants"). Doc. 1. As part of insider-trading charges that were brought against Defendants, the SEC requests the Court issue a permanent injunction against Defendants; issue an order that requires Defendants to disgorge all of their ill-gotten gains from the activities that are alleged in the SEC's complaint, plus prejudgment interest; issue an order that requires Defendants, pursuant to 15 U.S.C. § 78u(d)(3) and 78u-1, pay civil monetary penalties; and issue an order that the Court retains jurisdiction over this matter. *Id.*

On September 23, 2019, Defendants Hale Smith, Michael Smith, Sr., Robert Smith, and Tutt each, without admitting or denying the allegations of the SEC's complaint, filed consents to

the entry of final judgment against them.  Docs. 2, 3, 4, 5.  Attached to each of the consents was a proposed final judgment.  Docs. 2-1, 3-1, 4-1, 5-1.  On October 3, 2019, the Court entered the corresponding proposed final judgments against Defendants Hale Smith, Michael Smith, Sr., Robert Smith, and Tutt.  Docs. 9-12.  Therefore, the sole remaining defendant is Nall.

On September 24, 2019, a summons was issued for Nall, who filed his answer to the SEC's complaint on October 23, 2019.  Docs. 6, 13.  On October 24, 2019, Nall filed his instant Motion to Transfer Venue and memorandum in support, to which the SEC filed its response, and Nall filed his reply.  Docs. 16, 17, 19, 20.  Nall's Motion to Transfer Venue is ripe for review, and the Court finds oral argument unnecessary.

## II.   STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "The Supreme Court has explained that '[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'"  *S. Mills, Inc. v. Nunes*, 746 F.3d 1223, 1226 (11th Cir. 2014) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)).  "Trial judges are permitted a broad discretion in weighing the conflicting arguments as to venue."  *England v. ITT Thomas Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988) (citing *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. Unit B July 1981), *cert. denied*, 456 U.S. 918, 102 S. Ct. 1775, 72 L. Ed. 2d 178 (1982)).  "[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient."  *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

### III.     DISCUSSION AND ANALYSIS

First, the Court must determine whether this action could have been brought in the Northern District of Alabama, the district court to which Nall seeks to transfer this matter. *See* 28 U.S.C. § 1404(a). Under the Securities Exchange Act, jurisdiction in a district court is determined as follows:

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business.

15 U.S.C. § 78aa.

In this case, Nall resides in Birmingham, Alabama and the previously named defendants (with judgments) are alleged to reside in either Demopolis or Thomaston, Alabama. Doc. 1 ¶¶ 11, 12, 13, 14, 15, 18. Therefore, this matter could have been brought in the Northern District of Alabama, Southern Division, which is located in Birmingham, and the SEC does not dispute this. *See* Doc. 19 at 3.

Second, the Court must weigh certain factors to determine whether to transfer a matter:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citing *Gibbs & Hill, Inc. v. Harbert Int'l, Inc.*, 745 F. Supp. 993, 996 (S.D.N.Y. 1990)). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell*, 650 F.2d at 616).

The Court finds, while the Northern District of Alabama would be a more convenient venue

for Nall and any Birmingham-based witnesses, their convenience does not clearly outweigh the SEC's choice of venue. The Court will address each of the factors in turn.

**A.    The Convenience of the Witnesses**

Nall argues a number of potential witnesses live in the Birmingham area, including partners of Nall Corp., Nall, Sr., and Golden Enterprises' board and special committee members. Doc. 17 at 5-7. As for the defendants who have reached settlements with the SEC and live in Demopolis and Thomaston, Nall argues those defendants will be required to travel regardless of the venue. *Id.* The SEC argues the trial of this matter will likely involve more than fifteen (15) witnesses and only Nall, Sr., and, at most, two (2) other witnesses who reside in the Birmingham area will participate in the trial. Doc. 19 at 4-5. On the other hand, the SEC argues no fewer than four (4) witnesses are from the Thomaston area. *Id.*

If a trial is held for this matter with this Court, it likely would be held in Selma, Alabama, since it was filed in the Southern District of Alabama, Northern Division. *See* GenLR 77 ("Court for the Northern Division shall be held in Selma when ordered by the Court in a particular case."). As Nall points out, the defendants from Demopolis and Thomaston would travel fifty (50) and forty (40) miles, respectively, to the Selma courthouse, while they would travel 110 and 116 miles, respectively, to the Birmingham courthouse. Doc. 17 at 7; *id.* at 7 n.5. The distances from Demopolis and Thomaston to the Birmingham courthouse is similar to the distances from Demopolis and Thomaston to the Mobile courthouse, 140 and 125 miles, respectively. *Id.* at 7.

On balance, this factor weighs against the transfer of this matter.

**B.    The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof**

Nall states the relevant documents and evidence for this matter could be made available in either venue due to available technology, and the SEC echoes Nall's assertion. Doc. 17 at 10; Doc.

19 at 5.

On balance, this factor is neutral to both parties.

### C. The Convenience of the Parties

Nall argues he and his counsel are located in Birmingham and the SEC's counsel is located in Atlanta. Doc. 17 at 7-8. The SEC argues the Northern District of Alabama would not be a more convenient venue for it since it intends to travel via airplane to either location. Doc. 19 at 5-6.

The convenience for the SEC is the same for either location, but it would be more convenient for Defendant if the venue was transferred to the Northern District of Alabama.

On balance, this factor supports the transfer of this matter.

### D. The Locus of Operative Facts

Nall argues the majority of operative facts that pertain to him – as the lone remaining defendant – are alleged to have occurred in Birmingham. This includes when Nall, Sr., is alleged to have passed merger information to Nall and when Nall is alleged to have communicated merger information to Hale Smith, and other defendants, via telephone. Doc. 17 at 9-10. The SEC argues Nall delivered the merger information to the defendants, who were in either Demopolis or Thomaston, and all of the subsequent securities-trading activity occurred within the Southern District of Alabama. Doc. 19 at 6-7. Further, the SEC argues the fact that Nall is the lone remaining defendant does not relieve the SEC from its burden of proof and it would be compelled to present the same case even if the other defendants had not settled. *Id.*

While Nall emphasizes the fact that he was in Birmingham when he was alleged to have communicated, via telephone, with the other defendants, on the other hand, those other defendants were located in Thomaston during those communications, so Nall's argument does not weigh in his favor. Doc. 1 ¶¶ 59-61, 75, 79-82, 85-88, 100-101, 104. Additional alleged instances where

insider information was communicated occurred in Thomaston as well as conduct related to the charged fraud. *Id.* ¶¶ 67-69, 93-94, 105-109.

On balance, this factor weighs against the transfer of this matter.

E.   **The Availability of Process to Compel the Attendance of Unwilling Witnesses**

Nall argues the Northern District of Alabama has the power to compel the testimony of any unwilling witnesses. Doc. 17 at 8-9. The SEC argues the Securities Exchange Act allows all parties to compel the attendance of witnesses from any place within the United States. Doc. 19 at 7; *see also* 15 U.S.C. § 78aa ("In any action or proceeding instituted by the Commission under this chapter in a United States district court for any judicial district, a subpoena issued to compel the attendance of a witness or the production of documents or tangible things (or both) at a hearing or trial may be served at any place within the United States.").

Both districts have the power to compel testimony.

On balance, this factor is essentially neutral.

F.   **The Relative Means of the Parties**

Nall argues he is a private citizen who resides in Birmingham and whose counsel is based in Birmingham and the SEC is a federal-government agency. Doc. 17 at 11. The SEC argues the Court may infer Nall is a man of means based on the allegations of the complaint, including the fact that he was involved in a joint business venture that was related to his charity project and was valued at more than $200,000.00, and the evidence in this matter will show Nall enjoys an affluent lifestyle. Doc. 19 at 7-8. Further, the SEC argues the depositions in this matter will occur where the witnesses are located and the only event Nall would be required to attend that will have a financial impact on him is the trial. *Id.*

The Court notes Nall does not argue he is unable to travel due to financial restraints or

otherwise and continues to make a convenience argument.

On balance, this factor is relatively neutral.

**G.      A Forum's Familiarity with the Governing Law**

Nall states the forums' familiarity with the governing law does not weigh in favor of, or against, a transfer to the Northern District of Alabama, and the SEC does not dispute his assertion. Doc. 17 at 10; Doc. 19 at 8-9.

On balance, this factor is neutral.

**H.      The Weight Accorded a Plaintiff's Choice of Forum**

Nall argues a plaintiff's choice of forum is afforded less deference when the plaintiff does not reside in the chosen forum, when none of the parties reside in the chosen forum, and when the majority of the operative events occurred in another forum. Doc. 17 at 11-12. The SEC argues their forum choice should be given deference because most of the parties reside, and most of the operative conduct occurred, in the Southern District of Alabama. Doc. 19 at 9-10. Further, the SEC argues 15 U.S.C. § 78aa gives the SEC latitude when it selects a forum in which to bring an action. *Id.*

"The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson*, 74 F.3d at 260 (quoting *Howell*, 650 F.2d at 616). Nall has provided little basis, other than his convenience, that the Plaintiff's choice of forum should be afforded less weight or that the choice should be overridden.

Therefore, this factor weighs against the transfer of this matter.

**I.      Trial Efficiency and the Interests of Justice**

Nall argues the Northern District of Alabama would be the most easy, expeditious, and inexpensive venue for trial. Doc. 17 at 12. The SEC argues this Court has already exhausted time

and effort in this matter because four (4) final judgments have been entered against defendants who have settled and a transfer to the Northern District of Alabama would place the SEC in a situation where it would have to enforce those judgments in this Court, if the need arises, and prosecute Nall in another district court. Doc. 19 at 10-12.

The Court has proceeded with this matter to the point where four of the five Defendants have had final judgments entered against them. The reasons proffered by Nall do not negate the SEC's correct position that this matter's potential transfer to the Northern District of Alabama may create two (2) jurisdictions of enforcement. While admittedly the Selma courthouse is not as robust as some other federal courthouses, neither party has shown that the case cannot be held there for either technological or security reasons. It is this Court's position that a Northern Division case will be held in Selma, absent a showing why it should instead be held in Mobile. Further, beyond Nall's and his counsel's convenience, he has not shown why Selma or Mobile are an inappropriate venue.

Therefore, this factor weighs against the transfer of this matter.

### IV.    CONCLUSION

When considering the various factors as a whole, they weigh against the transfer of this matter. Accordingly, based on the foregoing analysis, Defendant James Wallace Nall, III's, Motion to Transfer Venue (Doc. 17) is **DENIED**.

**DONE** and **ORDERED** this the 17th day of June 2020.

      s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE